UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-------------------------------------------X
Gary Null & Associates Inc.

                     Plaintiff,

     - against –

DNE Nutraceuticals Inc., ANS
Nutrition Inc. and Dietary
Supplement Systems LLC.

                 Defendants

-------------------------------------------X

                                  **COMPLAINT**

Plaintiff, Gary Null & Associates Inc. by its attorney and as for its complaint against Defendants

DNE Nutraceuticals Inc., ANS Nutrition Inc. and Dietary Supplement Systems LLC states as

follows:

### JURISDICTION AND VENUE

1. The court has subject matter jurisdiction pursuant to 28 USC 1332(a)(1) as the Plaintiff

   and Defendants are corporations incorporated and operating in different states and the

   amount in controversy well exceeds $75,000.00.

2. The Court has personal jurisdiction over the Defendants pursuant to New York CPLR

   §302(a)(1), 302(a)(2) and/or 302(a)(3)(i) or 302(a)(3)(ii), as the Defendants transacted

   business within this state and/or contracted anywhere to supply goods in the state, and/or;

   committed a tortious act within the state, and/or; committed tortious acts without the state

   causing injury to persons or property within the state while regularly conducting business

in the state, and/or engaged in a persistent course of conduct and/or derived substantial revenue from goods used or consumed or services rendered in the state and/or expects or should reasonably expect its acts to have consequences in the state and derives substantial revenue from interstate or international commerce.

3. Venue is proper in this district under 28 U.S.C. §1391(b), in that a substantial part of the events or omissions giving rise to the claims arose in this district and/or a substantial part of the property that is the subject matter of this action is situated in this district.

## THE PARTIES

4. The Plaintiff, Gary Null & Associates is a New York Corporation with a place of business at 218 West 37th Street, 5th Floor, New York, NY 10018.   For over 35 years Plaintiff has been a provider of premium health products including vitamin and mineral supplements, nutraceutical powders made from nature's most beneficial super foods as well as a selection of natural skin, hair and oral hygiene and state-ot-the art water purification systems.  The Plaintiff also sells and distributes a large collection of multimedia products containing Dr. Gary Null's multi-award winning documentaries on topics such as health and the environment.

5. On information and belief, Defendant DNE Nutraceuticals Inc. is a New Jersey Corporation with a place of business at 700 Central Avenue, Farmingdale, New Jersey 07727 ("DNE"). Upon further information and belief DNE formulates, manufactures and/or packages nutritional supplements and/or nutraceuticals.

6.   On information and belief, Defendant ANS Nutrition Inc. is a New Jersey Corporation
with a place of business at 700 Central Avenue, Farmingdale, New Jersey 07727
("ANS"). Upon further information and belief ANS formulates, manufactures and/or
packages nutritional supplements and/or nutraceuticals.

7.   On information and belief, Defendant Dietary Supplement Systems LLC. is a New Jersey
Limited Liability Company with a place of business at 700 Central Avenue, Farmingdale,
New Jersey 07727 ("DSS"). Upon further information and belief DSS formulates,
manufactures and/or packages nutritional supplements and/or nutraceuticals.

RELEVANT FACTS

8.   On or about August 12, 2015 Plaintiff entered into a "Contract-Manufacturing
Agreement" ("Agreement") with Defendant DSS, who identified itself as the
"Manufacturer."  A copy of said Agreement is attached as Exhibit 1. The provisions of
said agreement included an obligation to meet confirmed shipping dates.

9.   The Plaintiff, through various communications, had made the Defendants aware that
Plaintiff had suffered monetary losses by a previous supplier not keeping inventory
current.  To allay Plaintiff's concerns Defendants, on or about November 19, 2015, sent
Plaintiff a written "Updated Protocol" that was countersigned by Plaintiff's CEO.

10. The Updated Protocol, printed on the letterhead of Defendant DNE, is attached as Exhibit
2. The Updated Protocol was entirely drafted by Defendants in the name of their common

President, Sam Zeldes and mailed to Plaintiff, whose CEO signed it without change.

The Updated Protocol states, in relevant part:

*Thank you for investing your trust in our company. We are pleased to present you with an updated protocol that shall govern the processing, manufacture and associated billing of Gary Nulls products. Please note that the term "Manufacturer" refers to ANS Nutrition, Inc. (ANS) and/or Dietary Supplement Systems LLC (DSS).*

A. *Manufacturer shall invoice Gary Nulls once weekly for items shipped from the agreed-upon fulfillment center.*
B. *Manufacturer shall monitor Gary Nulls product levels and will coordinate additional purchase orders to maintain adequate supply.*
C. *Manufacturer shall notify Gary Null's accounting staff of product level and any other needs.*

*We appreciate your business to date and we are confident that we can continue to tailor our protocol to your satisfaction , enabling us to efficiently service your particular needs.*


11. The Updated Protocol was emailed to Plaintiff by Fred Lopez, who identified himself as

Business Development Manager of Defendant DNE. The email was accompanied by a

copy of a spreadsheet prepared by the Plaintiff showing how many of each of its best-

selling products were sold per month and how much needed to be ordered in advance.

Mr. Lopez' stated in his email "I have reviewed Gary Null's monthly sales and will make

sure to maintain your account with the utmost care".


12. Responsible officers and agents of the defendants were aware that to keep their

commitments to Plaintiff, it was necessary to assure that Plaintiff always had in stock at

all times 1000 containers of its best selling products and 500 containers of all other

products and that it was their responsibility to fill purchase orders in a timely manner and

alert Plaintiff when inventory was running below agreed upon levels.

13. At least as early as the beginning of 2017 Defendants, without informing Plaintiff, commenced delaying filling Plaintiff's purchase orders, without explanation.  While timely fulfilment of a purchase order is accomplished in about six weeks, Defendants delayed fulfilling orders, many for as much as 4 to 6 months or more.

14. At least as early as the beginning of 2017 Defendants, without informing Plaintiff, delayed in paying their supplier(s) of nutritional supplement powders, sometimes for many months and in some cases did not pay them at all, all without explanation.  As the suppliers were not paid, the Defendants did not receive the ingredients necessary to manufacture or bottle product.

15. At least as early as the beginning of 2017, Defendants unduly delayed by months or completely failed to complete the QA testing and label approval processes that are necessary to produce and properly label Plaintiff's nutritional supplement and nutraceutical products.  As a merchant and manufacturer of these products DNE held itself out as capable of doing so.

16. At least as early as the beginning of 2017 Defendants supplied Plaintiff with products that were unfit for consumption and/or arrived damaged.  Such products were unsaleable and were returned by Plaintiff's customers.

17. At least as early as the beginning of 2017 Defendants ceased informing Plaintiff of the inventory level of its products and made no attempt to fulfill its obligations to see that inventory levels were maintained, as they were contractually bound to do.

18. At least since the beginning of 2017 without explanation Defendants all but ceased communicating with Plaintiff in any manner, including its CEO, Accountant, and sales and marketing staff.  Questions about orders, concerns about product and inventory and all other normal business inquiries, whether by phone or email were left unanswered.  To the extent Defendants responded by promising production or delivery dates of products, such promises were almost always broken.

19. As a result of Defendants' actions, including refusing to fill purchase orders in a timely fashion and sometimes not at all, not paying their suppliers or severely delaying payment of their suppliers, failing to follow proper QA and label approval procedures, selling products unfit for consumption, not responding to Plaintiff's attempts to obtain information and otherwise communicate with the Defendants, sometimes for months at a time and otherwise refusing to address Plaintiff's legitimate business concerns during a time that Plaintiff was losing many thousands of dollars per month, Plaintiff suffered from lost sales, the loss of thousands of customers and the loss of good will.  Plaintiff has suffered damages as a result the aforementioned actions by Defendants in an amount to be fully determined at trial but believed to be in excess of at least Five Hundred Thousand Dollars ($500,000.00).

20. As the Plaintiff's losses continued to increase, Defendants began demanding that the Plaintiff greatly accelerate its payments to Defendants to lessen an open balance that Defendants had themselves caused by denying Plaintiff the products that it needed to have so it could make sales.  This extortionate demand was in contradiction to the updated protocol, in which it was agreed that Plaintiff would be invoiced only "once weekly for items shipped from the agreed-upon fulfillment center."

21. On information and belief, Defendants committed these wanton and malicious actions with intent to seriously damage the Plaintiff, and diminish its good will and market value, and make it vulnerable to being purchased at a severely depressed price after driving down its value through the actions complained of herein.

As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, including but not limited to loss of revenue, loss of sales, loss of customers and loss of customer good will.

AND AS FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRCT

22. Plaintiff restates and realleges all of the allegations set forth in paragraphs 1- 21 as if fully set forth herein.

23. The Plaintiff and Defendants entered into written Agreements, which are binding and enforceable.  The Defendants also made oral promises to obtain Plaintiff's business that were accepted by the Plaintiff and are also binding and enforceable.

24. Plaintiff fully performed its obligations under the Agreements and satisfied all conditions precedent to bringing this action. Plaintiff sent timely purchase orders for products, giving Defendants adequate time to produce and/or have products produced and bottled. Plaintiff also timely provided Defendants with any other information and materials required to assure timely and proper production and distribution of product.  Plaintiff also timely paid all monies due under the Agreements.

25. Defendants have breached their specific obligations under the Agreements through the actions cited above, including refusing to fill purchase orders in a timely fashion and sometimes not at all, not paying their suppliers or severely delaying payment of their suppliers, failing to follow proper QA and label approval procedures, selling products unfit for consumption, not responding to Plaintiff's attempts to obtain information and otherwise communicate with the Defendants, sometimes for months at a time and otherwise refusing to address Plaintiff's legitimate business concerns during a time that Plaintiff was losing many thousands of dollars per month.   As a result of these actions in breach of contract, Plaintiff suffered from lost sales, the loss of thousands of customers and the loss of good will.  Plaintiff has suffered damages as a result the aforementioned actions by Defendants in an amount to be fully determined at trial but in excess of at least Five Hundred Thousand Dollars ($500,000.00).

26. Further, Defendants, in complete violation of their implied covenant of good faith and fair dealing, committed the above mentioned actions as well as their acts of material concealment and extortion in bad faith and with a malicious intent to seriously financially

8

damage the Plaintiff, and diminish its good will and market value, and nearly put it out of business, warranting the award of punitive damages.

## AND AS FOR A SECOND CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

27. Plaintiff restates and realleges all of the allegations set forth in paragraphs 1- 26 as if fully set forth herein.

28. Defendants are "Merchants" as defined by the Uniform Commercial Code (UCC) with respect to the goods ordered, produced or sold under the Agreements.

29. Defendants have violated their implied warranty of merchantability under UCC §2-314 .

## AND AS FOR A THIRD CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

30. Plaintiff restates and realleges all of the allegations set forth in paragraphs 1- 29 as if fully set forth herein.

31. Defendants are "Merchants" as defined by the Uniform Commercial Code (UCC) with respect to the goods ordered, produced or sold under the Agreements.

32. Defendants have violated their implied warranty of fitness for a particular purpose under §2-315.


WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants and award the Plaintiff the following relief: (i) award damages to Plaintiff as against Defendants in an amount to be fully determined at trial but at least $500,000.00; (ii) award punitive damages as against Defendants due to Defendants' wanton and malicious conduct; (iii) award Plaintiff its costs and reasonable attorney's fees and; (iv) grant such other or further relief as the Court deems just and equitable.

Dated:  August 9, 2018

Respectfully submitted

Neal S. Greenfield (NG4326)
218 West 37th Street, 5th Floor
New York, NY 10018
Tel: (646) 926-5453
 Email: ngreenfield@garynull.com
Attorney for Plaintiff, Gary Null & Associates, Inc.